# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Patrick Lawrence, | ) CIVIL ACTION NO. 9:16-0103-RMG-BM |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| Captain Wilson, Corporal Jackson, Deputy Brooks, Lt. Woods, Officer Bronxon and Officer Napier, | ) |
| Defendants. | ) |

This action was filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time this action was filed was an pretrial detainee at the Bamberg County Detention Center,[1] alleges violations of his constitutional rights by named Defendants.

The Defendants filed a renewed motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on September 1, 2016. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on September 6, 2016, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendants' motion for summary judgment on October 12, 2016, to which the Defendants filed a reply memorandum on October 14, 2016. Plaintiff filed a sur reply on October 27, 2016.

---

[1]Plaintiff has, since the filing of this action, been released from custody. He now lives in Georgia. See Court Docket No. 60 [Change of Address Notice].

Defendants' motion is now before the Court for disposition.[2]

## Background and Evidence

Plaintiff complains in his verified Complaint[3] that there is no medical screening for infectious or communicable diseases when prisoners enter the Detention Center, and that there are "unlicensed people" handing out medication and prescription narcotics to inmates. Plaintiff further complains that whether a detainee can see any type of medical professional is at the "sole discretion" of the Defendant Latarcha Wilson, a Captain at the Detention Center. Plaintiff also generally complains that he has filled out "multiple" medical requests to be seen by a mental health professional because (Plaintiff claims) he is bipolar and suffers from depression, but that he had not been seen "as of yet".[4] Plaintiff also complains that he went through withdrawal following his transfer to the Detention Center from another jail in January 2014 because "the administration [presumably at the Berkeley County Detention Center] failed to get medical records from other facility and get me my meds".

Plaintiff complains in his Complaint that the Detention Center is a "lock down facility" and that most cells have no lights. Plaintiff alleges that he is afraid of the dark due to having suffered childhood abuse, and that even though he had told staff members of this fear, the

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se litigants are considered as affidavits with respect to any factual allegations contained therein that are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[4]No dates are provided with respect to any of these allegations.

Defendants Napier, Brooks, Broxton[5] and Woods (among others) all left him "to suffer in the dark with no meds", with the Defendant Jackson, a Corporal, telling him on several occasions that "this is jail". Plaintiff also alleges he informed Officer Broxton during intake on December 2, 2015 that he takes medication for "bipolar intermittent explosion disorder and depression", but that "nothing to date has been done".

Plaintiff complains that in Unit E (where he was initially assigned) only three out of eight cells have lighting, with the rest of the cells being "dark". Plaintiff also complains that the lights in the cells are turned off at 10:00 p.m., and that after the lights go out he would hear other inmates moving around "causing [him] to have panic attacks". Plaintiff alleges that on December 6, 2015 he asked the Defendant Officer Brooks to move him because he was "freaking out" due to the lighting situation and inmates moving around at night. Plaintiff alleges that Brooks moved him to another cell where there was "no light at all", so after two more nights he asked the Defendant Officer Napier to move him again. Plaintiff alleges that Napier then moved him to another cell that had "ambient light" on December 8, 2015.

Plaintiff also complains that the shower in the Unit "is so hot that you cannot get in it". Plaintiff alleges that the "Unit as a whole" signed a request asking the Defendant Captain Wilson to "turn the water down". Plaintiff further alleges that the Defendants Napier, Jackson, and Brooks were all aware of this situation, but that Corporal Jackson told him the water had always been that hot and "ain't nothing going to be done . . . ."

Plaintiff also complains that "black mold grows everywhere in this jail", with the situation being especially bad in the shower, although "they did paint over all shower units". Plaintiff further complains that the security checks are "very slack", with the staff walking through

_____



[5]Correct spelling.



3

the Unit four times a day (7:00 a.m. 4:00 p.m., 7:00 p.m., and 11:00 p.m.). Plaintiff argues that there should instead be mandatory walk throughs every sixty minutes to check on the well being of the inmates. Plaintiff complains that "people could be dead back here and they wouldn't even know it".

With respect to the relief Plaintiff requests in his Complaint, Plaintiff seeks an order from this Court mandating that the Detention Center hire a full time LPN and doctor to screen people and so that there will be "someone with knowledge" to hand out prescription medications. Plaintiff also seeks an order from this Court closing the facility until a treatment team can come in and remove all of the "black mold". He also wants security lighting to be installed, that "all lights be fixed", and that sixty minute walk throughs be mandated. Finally, Plaintiff also seeks monetary damages for having been exposed to these conditions. See generally, Plaintiff's Verified Complaint.

In support of summary judgment in the case, the Defendant Latarcha Wilson has submitted an affidavit wherein she attests that she is the Director of the Bamberg County Detention Center and is familiar with the Plaintiff, a former inmate. Wilson has attached to her affidavit excerpts from Plaintiff's inmate records from the Detention Center.

Wilson attests that Plaintiff entered the Detention Center on a probation violation on December 2, 2015. Plaintiff had been transported to the Detention Center from a Georgia Correctional Facility. Plaintiff subsequently was transferred out of the Detention Center on January 22, 2016 to the custody of the South Carolina Department of Corrections (SCDC). Wilson attests that when Plaintiff entered the Detention Center on December 2, 2015, no medications accompanied him. A Medical Receiving Screening form was completed, on which Plaintiff indicated he had bipolar disorder but said he was not under a doctor's care and was not using any medication. This form, which is signed by the Plaintiff, also reflects that Plaintiff did not state he had any need for medical or mental health care at the time of his entry into the facility. See also attached Exhibit

(Court Docket No. 36-3, p. 5).

Wilson attests the regular intake procedure is for the officer to complete the Medical Screening form and have the inmate review it, correct any errors, and sign it, and that if an inmate signs his Medical Screening form, she "can only assume that the inmate agrees that the information on the form is accurate".[6] Wilson further attests that the Detention Center's earlier records on the Plaintiff do not indicate that he regularly took any medication. Specifically, when Plaintiff had previously entered the Detention Center on January 8, 2014, his Intake Form stated that the only medication he was taking was an antibiotic for a hip infection. See Exhibit (Court Docket No. 36-3, pp. 17-18).[7] Again, this form is signed by the Plaintiff. Wilson attests that Plaintiff thereafter remained at the Detention Center until January 28, 2014, during which period of time he did not request any medical care. Plaintiff was also an inmate at the jail in January 2012 and again in December 2012, both of which times when he entered the jail he said he was on no medications. See also Exhibit (Court Docket No. 36-3, pp. 22-23, 27, 29).

Wilson attests that on January 7, 2016 Plaintiff requested medical care for a spider bite. Plaintiff was transported to the office of a local physician, Dr. Dale Padgett, where he was seen by Dr. Charles Gaillard, a physician in that office. See also Exhibit (Court Docket No. 36-3, p. 7). Wilson attests that Dr. Gaillard's records indicate that Plaintiff was prescribed antibiotics for his complaint of a spider bite and was deemed suitable to return to the jail. See also Exhibit (Court Docket No. 36-3, p. 9). Wilson observes that if the Plaintiff needed any other medications, he

---

[6]Notably, the sentence "I hereby state that the above information is correct to the best of my knowledge" appears directly above where the inmate signs the form upon completion. See Exhibit (Court Docket No. 36-3, p. 5).

[7]This form does also indicate that Plaintiff stated he was being treated by a Dr. "Kissinger" for bipolar disorder for which he took medications, but there is no indication Plaintiff had any medications relating to this condition or treatment with him at that time.



certainly could have requested them at that visit. Wilson also attests that she does not recall receiving any requests from the Plaintiff for medical health services nor for any medical care other than his complaint of a spider bite, that she had found no other requests for medical or mental health care in Plaintiff's Inmate Record, and that she has never refused the Plaintiff any requested medical care. Wilson attests that while Plaintiff has complained about medication administration at the Detention Center, the only medications Plaintiff was ever directed to take while at the Detention Center were antibiotics, and that the Plaintiff was not, to her knowledge, prescribed any narcotic while he was in the Detention Center.

Wilson attests that the Detention Center is a seventeen hour lock down facility, with inmates being allowed out of their cells from 8:00 a.m. until 1:00 p.m., and from 5:00 p.m. until 7:00 p.m. Wilson further attests that the cells at the Detention Center all have adequate lighting, and that while there are cells which have broken light fixtures, replacement of those fixtures is planned. Even in those cells, however, there is adequate ambient lighting from the hallway areas, even at night. Wilson attests that she was never told of any psychological issues Plaintiff had with being in the dark, and that Plaintiff never told her of any panic attacks or other health issues, except the spider bite.

Wilson further attests that Plaintiff was moved within the Detention Center more than once to accommodate his needs and requests. Wilson attests that although she was told that Plaintiff had a problem with being behind doors and wanted to go to the more open unit of the jail, that his custody level was incompatible with placement on that side of the Unit. Even so, when Plaintiff complained about a cellmate's behavior, the cellmate was moved away to another cell. Further, when Plaintiff requested a one man cell, he was moved to one. Wilson attests that even though that cell's lighting was not to the Plaintiff's satisfaction, it was safe.



Wilson also attests that she is not aware of any inmate who was ever burned by the shower water, and that prior to Plaintiff's arrival, no inmate had ever complained to her about the showers at the Detention Center. However, during the period of time Plaintiff was incarcerated there, she received a request signed by several inmates regarding the shower temperature. As for Plaintiff's complaints of mold, Wilson attests that the facility is cleaned daily with bleach, and that she knows of no complaints by the Plaintiff regarding mold while he was incarcerated at the Detention Center.

Wilson concludes her affidavit by attesting that she has never denied Plaintiff any necessary or requested medical or mental health care, that she relies on the medical judgment of the physicians who attend to inmates such as the Plaintiff as to their medical care and that she never denied the Plaintiff any care or medication that was ordered or directed by a physician and communicated to her, and that she has never violated any constitutional right of the Plaintiff. See generally, Wilson Affidavit., with attached Exhibit (Inmate Records).

The Defendant Roy Brooks has also submitted an affidavit wherein he attests that he is employed at the Detention Center and is familiar with the Plaintiff, a former inmate. Brooks attests that Plaintiff was never content with his placement, even after he was moved to accommodate his complaints. Further, he never moved the Plaintiff for any punitive purposes, and that the decision to move an inmate was not even his to make, as that decision could only be made by a supervisor. With respect to Plaintiff's complaint about the temperature of the shower water, Brooks attests that he relayed Plaintiff's complaint to Captain Wilson. Brooks attests that he does not know how to control the jail's water heater, nor is he authorized to do so, since that task requires maintenance personnel. Brooks further attests that although Plaintiff told him on one occasion that he should be on medication, that Plaintiff acknowledged that he was not on any medication when

7

he arrived at the jail. Brooks attests that he recalls Plaintiff seeing a doctor at least once while he was in the jail, and that he never denied Plaintiff any medication or subjected Plaintiff to any constitutional violations. See generally, Brooks Affidavit.

The Defendant Isaac Jackson has submitted an affidavit wherein he attests that he is employed by the Detention Center with the rank of corporal, and that he is familiar with the Plaintiff. Jackson attests that within days of Plaintiff's arrival at the Detention Center, he was moved from one cell to another at his own request due to incompatibility with his cell mate. Jackson attests that, after that move, Plaintiff complained that his cell had insufficient lighting and that he [Plaintiff] had been abused as a child. Jackson attests that he then moved Plaintiff again to a cell with better lighting. Even so, Jackson attests that the lights inside the cells are turned off at 10:00 p.m.. although the lights in the hallway remain on.

Jackson attests that Plaintiff did not like being behind closed doors and wished to move to the more open side of the facility, but that that this request could not be accommodated because of Plaintiff's custody level. Jackson also attests that he never knew of any medication which was prescribed to the Plaintiff that was ever denied to him. Jackson attests that Plaintiff did complain to him about the shower temperature, and that he then notified the Jail Administrator, Captain Wilson, who called the County's maintenance office. Jackson attests that the temperature was corrected soon thereafter. Jackson attests that he is not authorized to change the water heater temperature for the shower, nor does he know how to do so. Jackson attests that he never violated any of the Plaintiff's constitutional rights. See generally, Jackson Affidavit.

The Defendant Christopher Napier has submitted an affidavit wherein he attests that he is employed at the Detention Center and is familiar with the Plaintiff. Napier attests that Plaintiff complained constantly from the time he arrived at the Detention Center. When booked, Plaintiff



said he did not want to be housed with anyone who "may give him trouble". Plaintiff was offered a single person isolation cell in the C Unit, but he declined this assignment because he wanted to be able to watch football on television. Napier attests that Plaintiff was then placed in a cell in the E Unit. Napier attests that this cell had sufficient lighting to read, but that Plaintiff requested to be moved because he could not clearly see the television due to the orientation of the cell. Plaintiff was then moved to another cell in the E Unit, but within a day or two in that area Plaintiff complained about the shower temperature. Napier attests that no other inmates had been complaining about the shower temperature before Plaintiff's arrival, but that they soon started to after the Plaintiff arrived on the Unit. Napier attests that he cannot alter the shower temperature, as that is a maintenance function. Napier attests that Plaintiff then later asked to be moved out of E Unit, and he was moved to the B Unit, where he remained until he left the Detention Center. Napier attests that during his time at the jail Plaintiff had requested to be housed in D Unit, a more open housing area, but that his custody level did not allow for this assignment.

Napier attests that he does not recall any discussion with the Plaintiff about any psychological problems he had with darkness, and while he does recall Plaintiff informing him that he [Plaintiff] had been molested as child, that this was not in relation to any cell lighting issue. Napier further attests that he never knew of any need of the Plaintiff for any medication except that which was prescribed for him for a spider bite. Further, when Plaintiff was booked into the facility, he stated he was not under a doctor's care and was not on any medication. Plaintiff's Medical Receiving Screening form reflects this information. See Exhibit (Court Docket No. 36-3, p. 5). Napier also attests that when Plaintiff arrived at the Detention Center from a Georgia Correctional Facility, he arrived with no medication, and that inmates arriving from other institutions typically arrive with medication if they have been prescribed medication. With respect to Plaintiff being seen



9

by physician for his complaint of a spider bite, Napier attests that to his knowledge Plaintiff was given the medication prescribed for that complaint. Napier attests that he never violated any of the Plaintiff's constitutional rights. See generally, Napier Affidavit.

The Defendant Ashley Woods has submitted an affidavit wherein she attests that she is employed at the Detention Center and is familiar with the Plaintiff. Woods attests that she does not recall Plaintiff telling her that he was sexually abused as a child, that indeed she does not recall any complaint Plaintiff ever made to her, and that she knows of no medication that Plaintiff ever needed and was denied while he was at the Detention Center. Woods attests that she never violated any of the Plaintiff's constitutional rights. See generally, Woods Affidavit.

Finally, the Defendant LaTonya Broxton has submitted an affidavit wherein she attests that she is employed at the Detention Center and is familiar with the Plaintiff. Broxton attests that she does not recall the Plaintiff ever telling her that he was sexually abused as a child, that he had any problems with darkness or being in the dark, or indeed made any complaint to her. Broxton attests that she knows of no medication that Plaintiff ever needed and was denied while he was at the Detention Center, that Plaintiff never requested that she move him to any other location within the jail, and that in any event she has no authority to change the placement of an inmate, as this requires the approval of a shift supervisor or Captain Wilson. Broxton attests that she has little interaction with male inmates except in booking, and that her only interaction with the Plaintiff was when he was booked into the facility. Broxton attests that she never violated any of the Plaintiff's constitutional rights. See generally, Broxton Affidavit.

After Plaintiff complained about not having sufficient time to gather evidence to support his claims, the Court provided Plaintiff with additional time as well as instructions on how to assemble or obtain evidence in an Order filed June 30, 2016. See Order, (Court Docket No. 42).

M
p10

Plaintiff subsequently submitted a response in opposition to the Defendants' motion for summary judgment, together with thirteen pages of supporting documents. This material includes a "sworn affidavit", in which Plaintiff attests that he has been "going to" the Bamberg County Detention Center since December 2011. Plaintiff attests that there has "always" been black mold growing on the walls and ceilings inside and outside of the jail. Plaintiff attests that he was present in the jail on two occasions when jail officials tried to paint over the black mold, once in 2012 in the B Unit and once in 2014 in the D Unit. Plaintiff also attests that under "Keith Glover"[8] inmates would be seen by medical or a doctor if you corresponded with him, and that "in all those years" inmates were always provided with cereal, an oatmeal bar, milk, juice, and a fruit cup for breakfast; a t.v. dinner or a 6" Tony's frozen pizza for lunch; and a t.v. dinner for dinner.

Plaintiff attests that he has been receiving mental health treatment since 2002. Although Plaintiff acknowledges that he did not request to be seen by a mental health professional in either 2011 or 2012, he states that he did request these services in 2013 and 2014. Plaintiff attests, however, that he has never been allowed to see a mental health professional while at the Bamberg County Detention Center, and that in 2014 he actually went through withdrawal for not having his prescription medications. Plaintiff further states that the lighting in the E Unit at the Bamberg County Detention Center has been broken since 2011, and that based on his experience of having been in and out of jails all over the Eastern seaboard, he can attest that the Bamberg County Detention Center is very "dungeonesque".

With respect to his spider bite, Plaintiff attests that he was scheduled to return to the doctor about seven days after his initial visit, but that the staff never took him for that followup appointment, and that as a result he now has a quarter size scar on his thigh. Plaintiff further attests

---

[8]Apparently Glover was a previous administrator of the jail.

that he was taken to the emergency room on other occasions and told to follow up with a specialist, but that the Detention Center did not honor these appointments. As for the shower, Plaintiff attests that the shower for the first month he was on E Side was so hot you had to jump in and out of the water to bathe. Plaintiff also complains that "they starve you to DEATH! juice boxes and Tony's frozen pizza?", and that he was subject to "brutal confinement". See generally, Plaintiff's Affidavit. Plaintiff has also provided a list of individuals who apparently he would like to call as witnesses in this case.

In addition to his affidavit and witness list, Plaintiff has also provided a copy of an Inmate Request Form addressed to Captain Wilson and dated December 20, 2015. Plaintiff's request reads:

> Can you please get me to mental health this week please. If not please move me out of this dorm it is entirely too loud for me in here. Please Cpt. Wilson do something living like this on my meds is one thing but it is proving to be a great challenge. I shouldn't have to lock myself in my room all day.

This Inmate Request form shows a response from Captain Wilson dated December 22, 2015 as follows:

> You shouldn't but that is your choice. It is not that easy to get into mental health when you don't have an open case w/them. I can't rush the process. I have put in for a referral. When is the last time you have had your meds[?] and who gave it to you[?].

See Plaintiff's Exhibit (Court Docket No. 46-1, p. 7).

Plaintiff has also provided as an exhibit a handwritten letter (original) addressed to Captain Wilson and showing a date of December 21, 2015. In this letter, Plaintiff states that this is his third request to see a mental health professional, and that he has also verbally requested numerous times to both her as well as Officers Jackson and Brooks. Plaintiff seeks an appointment so he can receive medication, and also complains that his environment is "extremely loud" and that



12

he has "no lights" in his cell.  Plaintiff complains that the inmates are too loud, screaming and arguing and slamming doors, and that the t.v. is "blaring".  Plaintiff states that if Wilson can't get him seen by a medical professional, he would like to be transferred to Barnwell or Orangeburg, "where they have mental health professionals on staff".  At the end of this letter, Plaintiff has added the notation that while he received no response to that letter, Wilson did respond to his Inmate Request form of December 20th .  See Exhibit (Court Docket No. 46-1, pp. 8-9).[9]

As another exhibit, Plaintiff has submitted a handwritten sheet wherein he lists a number of phone calls he alleges he made from the E Unit secured phone to various individuals.  See Exhibit (Court Docket No. 46-1, p. 10).  Plaintiff has also submitted as an exhibit what appears to be a handwritten request to Captain Wilson asking for copies of his inmate account records.  On the bottom of this exhibit is written "answered on 01/4/16 with printout from Lt. Woods".  See Exhibit (Court Docket No. 46-1, p. 11).[10]  Plaintiff has also submitted as another exhibit what appears to be an original writing[11] which purports to be a request directed to the staff at the Detention Center dated December 31, 2015, asking for a release of his debit card to a "Diane Bradley".  See Exhibit (Court Docket No. 46-1, p. 12).

Finally, Plaintiff has submitted a copy of an Inmate Request form dated January 13, 2016 and addressed to Captain Wilson, wherein Plaintiff is requesting that Wilson call a "Mr. Crossland" to ask Crossland to bring him a copy of his "acceptance letter to the shield program as

---

[9]The separate notation referenced hereinabove is on the back of p. 9 of the filed exhibit; however, the back of this page is not on the docket.  Reference is therefore craved to the original exhibit.

[10]Although this exhibit appears to be an original, Plaintiff has written "Copy" on the top of the exhibit.

[11]Although Plaintiff has again written "Copy" on the top of this exhibit.



well as copies of all the reports I had all my attorneys fax him". This request form apparently has something to do with criminal charges Plaintiff was facing, as the response from Captain Wilson indicates that the information would be assembled and given to Plaintiff's public defender. See Exhibit (Court Docket No. 46-1, p. 13). Plaintiff also filed a supplemental response to the Defendants' summary judgment motion on September 6, 2016, but no further exhibits or evidence was attached.[12] See also (Court Docket Nos. 56 and 57).

As an attachment to their reply memorandum, the Defendant Latorcha Wilson submitted a supplemental affidavit wherein Wilson attests that she has reviewed the Inmate Request form dated December 20, 2015 (filed by the Plaintiff as an exhibit). Wilson attests that this form was not found in the Plaintiff's detention center records when she retrieved the file earlier in this case, but that she does recognize the handwriting on the response as being hers, and can only speculate that it was mislaid or misfiled or that a copy was not made for the file before the response was delivered. Wilson attests that while she does not recall this interaction with the Plaintiff, she does know that he was moved to another cell, although she does not know whether this move was in response to this complaint. She also notes that the response indicates that she had requested a referral to mental health services, and while again she does not recall these interactions, she attests that if she wrote that on the response form, that she is sure she made the request. Wilson further attests that Plaintiff's inmate record contains no information to indicate that he ever responded to her request that he provide more information on his medications and provider name, and that while in these types of situations she tries to obtain for the inmate a refill of recently prescribed medications from the inmate's provider if possible, in this case the Plaintiff at his booking had

---

[12]Plaintiff did attach some duplicative exhibits that he had already submitted with his earlier filings. See Court Docket No. 57-1 pp. 26-32.

14

denied being on medications or under a doctor's care. <u>See</u> <u>also</u> <u>Exhibit</u> (Court Docket No. 36-3, p. 5).

Wilson further attests that this inmate request is dated December 20, 2015, which is a Sunday and that such she does not work on Sundays. Therefore, the earliest she could have seen this request would have been Monday, December 21, 2015, assuming she worked that day. Wilson also notes that although Plaintiff requests that he have a mental health appointment "this week", that it is virtually impossible absent a court order to obtain a mental health appointment for an inmate within the same week, while also noting that the week in question included Christmas eve and Christmas day, while the following week included New Years Day, and that these would have been difficult times to obtain a mental health appointment. In any event, Wilson notes that Plaintiff *did* see a physician on Friday, January 8, 2016, for his complaint of a spider bite, and that there was nothing that precluded the Plaintiff from requesting any mental health medications he believed he needed from the attending physician at that time. Wilson attests that they would have obtained any other medications prescribed to the Plaintiff on that visit, as they obtained the medications prescribed for his spider bite.

Finally, Wilson attests that she has reviewed the letter submitted by the Plaintiff dated December 21, 2015 (Court Docket No. 46-1, pp. 8-9), and attests that she does not recall ever seeing this letter, but that in any event her response to Plaintiff's other request dated the previous day indicates that she had requested a mental health referral for him. Wilson also attests that she never observed Plaintiff display any signs that he would harm himself or others, that she was never informed of any such behaviors, and that he was simply unhappy with his placement in the jail even though he was repeatedly moved to accommodate his complaints. <u>See</u> <u>generally</u>, <u>Wilson</u> <u>Supplemental Affidavit</u>.



15

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review of the evidence and arguments provided by the parties, the undersigned concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in case.

### I.

### Injunctive Relief

First, since Plaintiff is no longer incarcerated at the Detention Center, to the extent he seeks injunctive and/or declaratory relief in his Complaint (i.e., that the Detention Center be required to hire a full time LPN and doctor, that sixty minute walk throughs be mandated, etc.), his claims are moot. Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009); Slade v. Hampton Roads

Reg'l Jail, 407 F.3d 243, 248-249 (4th Cir. 2005)[holding that former detainee's request for injunctive relief was moot]; Taggart v. Oklahoma, 74 Fed.Appx. 880, 882 (10th Cir. 2003)[inmate's claims concerning his medical needs against prison officials for injunctive relief were rendered moot by his release]; LaFlame v. Montgomery County Sheriff's Dep't., 3 Fed.Appx. 346 at * * 1 (6th Cir. Jan. 31, 2003)[same].

Plaintiff is not only no longer incarcerated at the Detention Center, he is not incarcerated at all, and is now living in Georgia. See Court Docket No. 60 [Change of Address Notice]; cf. Johnson v. Stevenson, No. 13-1616, 2014 WL 6748956 at * 1 (D.S.C. Dec. 1, 2014) [With regard to the [narrow] exception for an action being "capable of repetition", one of the characteristics "require [ ] the [reasonable expectation that the] same prisoner [will] face the same illegalities at the same prison".]. Defendants are therefore entitled to summary judgment with respect to Plaintiff's request for injunctive and/or declaratory relief. See Williams v. Griffin, 952 F.2d at 823 ["[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."]; Taylor v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) [holding that prisoner's transfer mooted a request for declaratory and injunctive relief]; United States Parole Commission v. Geraghty, 445 U.S. 388, 397 (1980) [Noting that the issue in controversy must "exist at the commencement of the litigation . . . [and] must continue throughout its existence"]; Powell v. McCormack, 395 U.S. 45, 496 (1969) ["[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome"].

## II.

### Damage Claims

To the extent Plaintiff is seeking monetary damages for alleged deprivations of his constitutional rights while he was housed at the Bamberg County Detention Center, those claims

survive his transfer out of the Detention Center. Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). Further, as public officials, the named Defendants are subject to suit for monetary damages in their individual capacities in a § 1983 lawsuit. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186, 1187 (4th Cir. 1991). Even so, for the reasons set forth hereinbelow, the undersigned does not find that the evidence is sufficient to create a genuine issue of fact as to whether any named Defendant has violated Plaintiff's constitutional rights.

As a pretrial detainee during the time period set forth in the Complaint,[13] Plaintiff's damage claims are evaluated under the due process clause of the Fourteenth Amendment, rather than the Eight Amendment (which is used to evaluate conditions of confinement for those convicted of crimes): see Bell v. Wolfish, 441 U.S. 520, 535 (1979); although the underlying standard is essentially the same. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)[Holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections]. Under this standard, to survive summary judgment Plaintiff must have evidence sufficient to give rise to a genuine issue of fact as to whether any named Defendant was deliberately indifferent to an excessive risk to his health or safety. Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. Mar. 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennen, 511 U.S.

---

[13]Defendants state in their brief that Plaintiff was being held as a probation violator. See also Wilson Affidavit, and attached Exhibit (Court Docket No. 36-3, p. 1). Since Plaintiff was being held pending a probation violation hearing, his status was akin to that of a pretrial detainee. Hicks-Field v. Harris County, Texas, No. 12-3650, 2015 WL 9583861 at * 19 n. 218 (S.D.Tex. Nov, 23, 2015) [Assuming for purposes of analysis that plaintiff was a pretrial detainee as he was awaiting a hearing on the charge and probation violation], adopted by, 2015 WL 9581844 (S.D.Tex. Dec. 30, 2015); Allen-Pieron: v. Southwestern Correctional, LLC, No. 13-4089, 2016 WL 4439997 at * 1 (N.D.Tex. Aug. 23, 2016) [Assigning pretrial detainee status for a probation violation].



825, 837 (1994).

Plaintiff's general and conclusory allegations about the conditions at the jail are not sufficient to give rise to a genuine issue of fact as to whether any of his constitutional rights were violated. During the time period set forth in the Complaint, Plaintiff was a prisoner in a county jail facility, not a hotel, and it should be expected that conditions in such a setting are often times less than ideal. Cf. Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988)). Even if the Defendants, or any one of them, may have been negligent in their treatment of the Plaintiff, that would not allow Plaintiff to proceed with his claims. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]; Lawrence v. Swanson Inmate Commissary Services, No. 97-6429, 1998 WL 322671 (4th Cir. June 4, 1998) [deprivation claims as a result of negligence fail to set forth a claim of constitutional magnitude]; Kidwell v. Buchanan, No. 93-15056, 1993 WL 230224 at **1 (9th Cir. June 29, 1993) [Where temporary restriction of amenities was found not to be cruel and unusual punishment].

Therefore, the only issue for this Court to decide is whether Plaintiff has submitted evidence sufficient to give rise to a genuine issue of fact as to whether the conditions under which he was confined violated his constitutional right to be free from conditions so deplorable that they could be deemed cruel and unusual punishment. Plaintiff has presented no such evidence.

**Non-medical conditions of confinement claims.** First, to the extent Plaintiff's complaint concerns where he was placed in the Detention Center (while Plaintiff was Placed in E Unit, he apparently wanted to be housed in D Unit, which had a more open housing area), dissatisfaction with an assigned security or custody status, by itself and without any evidence

19

showing a constitutional violation occurred, does not state a viable § 1983 claim. Cf. Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir. 1976), cert. denied, 429 U.S. 846 (1976)[classification generally upheld unless inmate proves arbitrary and capricious or a clear abuse of discretion]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."].

As for Plaintiff's other claims about the general conditions existing at the jail, they fail for the simple reason that he has submitted no evidence whatsoever to establish a claim of a constitutional violation. Specifically, Plaintiff has provided no evidence to show what the temperature of the shower water was, the extent or even existence of mold at the jail in a quantity sufficient to give rise to a genuine issue of fact as to whether a constitutional violation has occurred, to show that the lighting was so bad in the jail that it amounted to a violation of inmates' constitutional rights, that he was not properly fed while at the Detention Center (apparently another claim he has intended to assert), or that the cell check procedures in place at the jail were so "slack" as to endanger inmates' safety. Baber, 977 F.2d at 874-75 [To survive a motion for summary judgment, the opposing party must respond to the motion with *evidence* showing there is a genuine issue for trial]. Rather, he just makes general and conclusory allegations and observations about these issues, without offering any actual evidence to show the existence of any deprivation of a constitutional magnitude. Drakeford v. Thompson, No. 09-2239, 2010 WL 4884897, at * 3 (D.S.C. November 24, 2010), citing Larken v. Perkins, 22 Fed. Appx. 114, 115 (4th Cir. 2001)[Noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, . . . [is] insufficient to stave off summary judgment"]; see also Johnson v. Reno Police Chief, 718 F.Supp. 36, 38 (D.Nd. 1989)["Even a pro se plaintiff may not rely wholly on conclusory

allegations, but rather must allege facts which, if proven, would entitle the plaintiff to relief"]; Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

Plaintiff's claims are not before the Court on a Rule 12 motion, where all Plaintiff has to do to defeat the motion is allege facts sufficient to state a claim. This is summary judgment, the stage where, to survive, Plaintiff must actually present evidence to show that he has a viable clam sufficient to get to trial. Cf. Malik v. Sligh, No. 11-1064, 2012 WL 3834850, at * 5 (D.S.C. September 4, 2012), aff'd. 507 Fed. Appx. 294 (4th Cir. 2013) [Finding that a self serving affidavit from the Plaintiff was "simply not enough to create a genuine dispute as to any material fact" in light of the other evidence that disputed the credibility of Plaintiff's self serving claims]. As noted, Plaintiff has submitted no actual evidence to support his claim that his constitutional rights have been violated with respect to any of these issues. Further, Plaintiff has also failed to present any evidence whatsoever to show that he suffered any injury as a result of these purported unconstitutional conditions of confinement. Witherspoon v. Berry, No. 13-2942, 2015 WL 1790222 (D.S.C. Apr. 15, 2015) [conditions of confinement claim requires showing of significant injury]; Holley v. Johnson, No. 08-629, 2010 WL 2640328 at * * 9-15 (W.D.Va. June 30, 2010)[noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does]; cf. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) ["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure



21

to the challenged conditions"]; Wilson v. Cook County Bd. of Commissioners, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed to establish that conditions in detention facility violated his due process rights where detainee failed to show any remedial injury]; see also Strickler v. Waters, 989 F.2d 1375, 1380-1381, n. 9 (4th Cir. 1993) [the mere incantation of physical or mental injury is inadequate to survive a motion for summary judgment].

Therefore, the Defendants are entitled to summary judgment on all of these claims. See generally Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]; Williams v. Ward, 567 F.Supp. 10, 13, 15 (E.D.N.Y. 1982)[holding that keeping hallway lights on all night did not violate a constitutional right even where Plaintiff claimed inability to sleep]; Bauer v. Sielaff, 372 F.Supp. 1104, 1110 (E.D.Pa. 1974)["[T]he discomfort of lights at night do[es] not constitute a constitutional deprivation."]; Beverati v. Smith, 120 F.3d 500, 505, n. 5 (4th Cir. 1977)[finding that inmate's alleged confinement for six months in deplorable conditions failed to state Eighth Amendment claim where there was no evidence that conditions "resulted in serious physical or emotional injury or the grave risk of such harm"]; Haggwood v. Magill, No. 15-3271, 2016 WL 4149986 at * 2, 5 (D.S.C. Aug. 3, 2016) [Noting that "[a] pretrial detainee's § 1983 claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes." and finding plaintiff failed to show claim for mold, mildew, and asbestos]; Irvin v. Owens, No. 10-1336, 2012 WL 1534787 at * 4 (D.S.C. Apr. 30, 2012) [General statement that Plaintiff believed conditions at Institution placed him in danger not sufficient]; Pruitt v. Moore, No. 02-395, 2003 WL 23851094, at * 9 (D.S.C. Jul. 7, 2003) [Only deliberate or callous indifference on the part of prison officials to a *specific known risk of harm* states an Eighth Amendment claim]; Wilson v. Cook County Bd. of Commissioners,

22

878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed to establish that overcrowding, inadequate staffing, inadequate opportunity for exercise, and inadequate grievance procedures in detention facility violated detainee's due process rights, as detainee failed to allege remedial injury]; Mays v. Springborn, 575 F.3d 643, 648 (7th Cir. 2009)[For diet claim, prisoner must show Defendant was deliberately indifferent to an objectively serious risk of harm and that the Defendants knew about it and could have prevented it but did not]; Bailey v. Kitchen, No. 08-141, 2009 WL 102534, at * 3 (D.S.C. Jan. 12, 2009)["Assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents"]; Tafari v. Weinstock, No. 07-693, 2010 WL 3420424 at * 7 (W.D.N.Y. Aug. 27, 2010)["[T]o establish a valid claim that the denial of food (or the denial of a medically proscribed diet) constitutes [a constitutional] violation, one must establish that there was a 'sufficiently serious condition' that resulted from the food not being received."].

        **Medical claims**. The only claims on which Plaintiff has at least presented some evidence relate to his purported medical condition. Even with respect to these claims, however, in order to avoid summary judgment, Plaintiff's evidence needs to be sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Kollyns v. Chavez, No. 05-3022, 2006 WL 2459484, at * 2 (D.S.C. Aug. 23, 2006) ["To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints"]; Estate of Miller, ex. Rel. Bertram v. Tobiasz, 680 F.3d 984, 989 (7th Cir. 2012)[The same standard applies for determining claims of deliberate indifference to the serious medical conditions of pretrial detainees and incarcerated individuals, though pursuant to the Fourteenth Amendment for pretrial detainees rather than the Eight Amendment.]. Plaintiff has failed to submit any such evidence.

First, Plaintiff alleges that the Defendants failed to schedule him for an appointment with a mental health professional and failed to address what Plaintiff contends are related mental phobias (primarily an aversion to being in the dark) while he was at the jail. This claim is based on Plaintiff's assertions in his verified Complaint that he is bipolar and suffers from depression, a condition exacerbated by being in the dark due to having suffered childhood abuse. However, Plaintiff has presented or introduced no medical records, no statement or records from any "Dr. Kissinger",[14] or any other sufficiently probative or otherwise verifiable evidence to prove this claim, or to establish that he in fact even suffers from any such condition. House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]. Plaintiff's own lay opinion that he suffers from such a severe mental condition for which the Defendants failed to obtain treatment for him is not by itself sufficient to establish a constitutional violation. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; see also Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]); Malik, 2012 WL 3834850, at * 5 [Finding that a self serving affidavit from the Plaintiff was "simply not enough to create a genuine dispute as to any material fact" in light of the other evidence that disputed the credibility of Plaintiff's self serving claims]

Even so, considered in the light most favorable to the Plaintiff, the evidence submitted *is* sufficient to establish as genuine issue of fact as to whether Plaintiff at least *told* one

---

[14] An individual referenced by Plaintiff in his Intake Form on January 8, 2014. See Exhibit (Court Docket No. 36-3, pp. 17-18).

24

or more of the Defendants that he was suffering from a mental condition and asked to see a medical professional. See generally, Plaintiff's Verified Complaint; Plaintiff's Affidavit [wherein Plaintiff attests that he requested to be seen by a mental health profession in 2013 and 2014]; Plaintiff's Exhibit [Inmate Request Form]; Plaintiff's Exhibit [Handwritten letter of December 21, 2015]. Again, however, even assuming for purposes of summary judgment that Plaintiff requested that he be seen by a mental health professional, no constitutional violation has been shown. A prisoner does not have a constitutional right to be taken to or seen by a doctor any time he wants to be, and no constitutional violation occurs unless a Defendant reasonably believes an inmate is in need of emergent care and deliberately fails to take appropriate action. Levy, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]; Farmer v. Brennen, 511 U.S. at 837 [A defendant must have engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Hill v Curcione, 657 F.3d 116 (2d Cir. 2011) ["[T]he 'essential test is one of medical necessity and not one of simple desirability"] (quoting Dean v. Coughlin, 804 F.2d 207, 2015 (2d Cir. 1986)).

Here, the evidence does not show that any named Defendant was deliberately indifferent to a known excessive risk to Plaintiff's health. The documentary evidence provided to this Court shows that when Plaintiff was admitted to the Detention Center in December 2015, he was accompanied by no medications, and that Plaintiff himself advised the intake official that he was not under a doctor's care and was not using any medication. Plaintiff then also signed an acknowledgment of this information. See Defendant's Exhibit [Medical Receiving Screening form] (Court Docket No. 36-3, p. 5). The documentary evidence from Plaintiff's previous entry into the Detention Center in January 2014 also shows that the only medication Plaintiff was taking at that

time was an antibiotic for a hip infection. <u>See</u> <u>Defendant's Exhibit</u> [Intake form] (Court Docket No. 36-3, pp. 17-18). While both of these forms reflect that Plaintiff did tell the intake official that he had bipolar disorder, there is no indication in these records that he was undergoing any treatment or had been prescribed any medications for any such condition at the time of his entry into the Detention Center. Similarly, Plaintiff's earlier entries into the Detention Center also show that when he entered the jail Plaintiff himself advised the intake officer that he was on no medications. <u>See</u> <u>Defendant's Exhibits</u> (Court Docket No. 36-3, pp. 22-23, 27, 29). There is also no indication or evidence that when Plaintiff was transferred into the Detention Center in December 2015 from a Georgia facility, he had been under any kind of medical care for a mental condition while he was at the Georgia detention facility.

In addition to these facts and evidence, on which the Defendants had every right to rely, the evidence reflects that shortly after the time Plaintiff's exhibits show he requested that Wilson refer him to a mental health professional, Plaintiff was transported to and seen by a local physician in his office for another medical complaint. <u>See</u> <u>Defendant's Exhibit</u> (Court Docket No. 36-3, p. 7). There is no indication in the evidence, nor does Plaintiff even allege, that he discussed any mental health problems he was allegedly experiencing at that time with this physician during this doctor's visit, or that any medications were prescribed as a result of this visit other than antibiotics for a spider bite. <u>See</u> <u>Defendant's Exhibit</u> (Court Docket No. 36-3, p. 9). Wilson attests that the Detention Facility would have (and did) provide Plaintiff with any medications that were prescribed to him by a physician, and Plaintiff has presented no evidence whatsoever to show that the facility did not or would not have done so. Further, Plaintiff's own exhibit [Inmate Request form] reflects that when he asked Wilson on December 20, 2015 to "get me to mental health", that Wilson responded that she had put him in for a referral. <u>See</u> <u>Plaintiff's Exhibit</u> (Court Docket No.

26

46-1, p. 7). However, Wilson also advised Plaintiff in her response that it was not easy to get a mental health referral when the inmate did not have an open case for such a condition with any medical provider, and that they "can't rush the process". She also notes that Plaintiff's request was being made over the Christmas and New Year's holidays. Id. The evidence reflects that Plaintiff was subsequently transferred out of the Detention Center on January 22, 2016, and Plaintiff has presented no evidence to show that he suffered any serious harm as a result of any delay in his being seen by a different physician (other than Dr. Gaillard, who did see him) during this period of a few weeks until his transfer, even assuming he actually suffers from the mental condition he claims. See generally Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188-1189 (11th Cir. 1994)["An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying *medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed"], overruled in part by Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002) (emphasis added). As such, no constitutional violation is presented in this evidence. Pruitt, 2003 WL 23851094 at *9 [only deliberate or callous indifference on the part of prison officials to a specific known risk of harm states on Eighth Amendment claim].

Finally, Plaintiff's claim relating to his treatment for the spider bite is also without merit. Plaintiff claims that he was supposed to have been taken back to the physician for a followup visit with respect to this spider bite. However, he has provided no evidence to show that he was ever scheduled for, or that any physician ever told any Defendant, that Plaintiff was to have a followup visit to the doctor for this complaint. Conversely, the evidence provided to this Court shows that when Plaintiff complained about having a spider bite he was promptly scheduled for a visit with a physician, he was then actually taken to a physician from whom he received treatment, and that after receiving treatment the physician released him to be returned to the facility. Significantly, the

physician's transfer note does not say anything about Plaintiff needing to be seen for a return or followup visit for this spider bite. See Exhibit (Court Docket No. 36-3, p. 9). See also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances].

There is no evidence of any deliberate indifference to a serious medical condition by any named Defendant, or anyone else, contained in this evidence. Therefore, this claim should be dismissed. Levy, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety".]; Green, 100 Fed.Appx. 45 [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; A.P. ex rel. Bazerman v. Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."]; cf. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel].

### III.

By reaching the conclusion that no compensable constitutional violation has been shown in the evidence, the undersigned does not intend to signal a lack of concern over Plaintiff's complaints. He has simply failed to submit any evidence to support his general and conclusory claims of unconstitutional conditions of confinement. Baber, 977 F.2d at 874-75 [To survive a motion for summary judgment, the opposing party must respond to the motion with evidence showing there is a genuine issue for trial]. As previously noted, even if one or more of the Defendants was negligent in their actions towards the Plaintiff, that would not entitle him to proceed in this Court. Grayson, 195 F.3d at 695 ["Deliberate indifference is a very high standard - a showing

of mere negligence will not meet it."]; Lawrence, 1998 WL 322671[deprivation claims as a result of negligence fail to set forth a claim of constitutional magnitude].

Hence, while Plaintiff may have some state law claim he could pursue relating to his allegations, absent some evidence of a significant injury suffered by the Plaintiff as a result of conditions deemed to be unconstitutional, or other accompanying factors not present in this case, the undersigned does not find that Plaintiff has presented a genuine issue of fact as to whether his *constitutional rights* were violated during his period of incarceration at the Detention Center sufficient to survive summary judgment. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right].

Similarly, while Plaintiff may pursue a claim in state court if he believes that the medical care provided to him constituted malpractice, that is not the issue before this Court. Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. The evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs, the standard for a constitutional medical claim, and Plaintiff's federal § 1983 medical claim should therefore also be dismissed. See Baker, 443 U.S. at 146 [§ 1983 claim does not lie for violation of state law duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."].



## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

November **22**, 2016
Charleston, South Carolina

30

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

<div align="center">

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

</div>

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



31